## JOHN W. SEYMOUR ET AL.
### v.
## DUNCAN MACKAY ET AL.

*Trust Deed—Release of—Cross-Bill to Restore—Fraud—Acceptance of New Note as Ratification—Review of Evidence.*

Upon a writ of error to review a decree dismissing a cross-bill, filed to determine the priority and extent of the liens claimed by the cross-complainant in certain lands, and to have the cancellation of a certain trust deed declared void and the trusts therein established, it is *held:* That the record does not present sufficient evidence to sustain the charge of fraud in procuring the release of said trust deed; and that the subsequent acceptance by the cross-complainant of a new note for the indebtedness covered by said trust deed, with full knowledge of said release, was a ratification thereof.

[Opinion filed December 11, 1886.]

IN ERROR to the Circuit Court of Carroll County; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. W. & W. D. BARGE, for plaintiffs in error.

Messrs. E. P. BARTON and J. M. HUNTER, for defendants in error.

WELCH, J. In the view we take of this case, we do not deem it necessary to consider the question presented by the original bill in the case, any further than may be necessary to the proper determination of the questions arising on the cross-bill. The complainant in the original bill does not appear by himself or counsel in this court, his name being used by Seymour, the complainant in the cross-bill, for the purpose of enabling him to prosecute this writ of error. His right to use the name is given by Sec. 71 of Practice Act. The original bill filed by Belding was on hearing dismissed by the Circuit Court, and also the cross-bill filed by Seymour was dismissed.

The only party before the court complaining is the complainant in the cross-bill. The cross-bill charges that the plaintiff in error, John W. Seymour, loaned David Belding $3,700 on the 13th day of December, 1867, for five years from the first day of January, 1868, at ten per cent. interest, for which Belding gave his promissory note, payable to Helen M. Seymour, the wife of John W. Seymour, and secured the same by trust deed to her, on the southwest quarter of section 30, in township 21, range 6, east of the 4th P. M., and the northwest quarter of section 31, in same township and range, in Carroll County, Illinois, which trust deed was recorded on the thirtieth of August, 1871. The cross-bill further charges that the money was the money of said John W. Seymour, and that the note and trust deed were made to his wife in order to place the matter in her hands in the event he should lose his life in the dangerous occupation in which he was engaged, of running trains on the railroad. That no portion of the money belonged to her and no part had been paid to her or him. That on the 10th day of October, 1871, Helen M. Seymour, at the request of her father, released said trust deed. That on the 5th day of February, 1870, Belding and wife executed to the defendant in error, Mackay, a conveyance in fee simple to said lands, together with other lands, for the consideration of the sum of $4,000. It is charged that Mackay paid the same by assuming payment of a mortgage to Jennings and mortgage to Lyman, and giving to Belding the balance in cash; that Mackay executed to Belding at the same time an agreement to reconvey on his being paid his $4,000, and interest at ten per cent. The cross-bill further alleges that about the first day of October, 1871, Belding, with the aid of Mackay, made an application to the Northwestern Life Insurance Company of Milwaukee, for the money sufficient to pay off all claims on the land, and that Mackay signed a certificate to the effect that the Belding farm was worth $75 per acre. And that Helen M. Seymour was then and there informed that it would be necessary to cancel the record of said trust deed, which she held, and believing that said Mackay was acting in good faith in making his statements as aforesaid

as to the condition and value of said land, and that he really intended to aid Belding, her father, in obtaining said money of said insurance company, and that he was going to settle up with said Belding, as he then talked of doing. At the special request of her father, said David Belding, she canceled her trust deed of record. The cross-bill further charges that after the trust deed was canceled Mackay persuaded Belding not to borrow of the insurance company, and thereby prevented her from obtaining payment of her trust deed. It also charges: Mackay in his attempt to aid Belding did so solely to get your orator's said trust deed to said Helen removed to pave the way for him to obtain said farm of said Belding without advancing any larger amount of money than what he had already loaned him. It further charges that he had never consented or assented to the release of said trust deed by said Helen. Bill prays that Belding and Mackay shall come to an accounting with each other and with Seymour so far as may be necessary to determine the priority and extent of Seymour's liens; asks that the Jennings mortgage be declared canceled; that the land in the Helen M. Seymour trust deed be declared subject to the trust therein declared; that the receipt and attempted cancellation of the same be declared void, and the trusts therein be established by decree, and for a decree for the sale of the land for the purpose of satisfying the amount due on the said note and trust deed. The answer of Mackay to those charges are, that until the filing of the Seymour cross-bill he never had any information of the existence of the Helen M. Seymour trust deed, or that either Seymour or his wife ever claimed any lien on any part of the land. Denies that he in any way hindered Belding from borrowing money of the life insurance company. Denies that he ever made any certificate that the land was worth $75 per acre. He denies that the Jennings mortgage constituted any part of the consideration of the $4,000 loaned by him to Belding. The court dismissed the cross-bill on hearing, and to reverse that decree Seymour has brought the case to this court by writ of error. Under chapter 67, title Mortgages, Sec. 8, it is provided that the mortgagee "shall, at

the request of the mortgagor, enter satisfaction upon the margin of the record of such mortgage in the recorder's office, which shall forever thereafter discharge and release the same and shall bar all actions or suits brought thereupon." It is insisted by the counsel for plaintiff in error that the entry of satisfaction was procured by fraud. The bill alleges that Helen M. Seymour was then and there informed by said Belding and said Mackay that it would be necessary to cancel the record of said trust deed, and believing that said Mackay was acting in good faith in making his statements as aforesaid, as to the condition and value of said land, and that he really intended to aid said Belding in obtaining said money, she executed the release. The court found there was not sufficient evidence to sustain the charge of fraud. We find no reason to differ with the trial court on its finding. There is no fraud charged or attempted to be proven against Belding respecting the satisfaction of the trust deed. So far as the proof shows, Belding undoubtedly expected to borrow money and to enter into a cattle speculation with Seymour but was unable to do so to the extent and in the manner contemplated. The evidence as to any fraudulent participation of Mackay in the cancellation of said trust deed is wholly insufficient to authorize a decree declaring said cancellation void. The evidence shows that Mackay had no knowledge of the existence of said trust deed; that he had two abstracts of said land, neither of which showed such trust deed. The only action taken by him in relation to the borrowing of money by Seymour was a certificate signed by him that he considered the Belding farm worth $75 per acre. Belding testifies that he advised him not to borrow of the life insurance company, that he would loan him what he needed to buy cattle, and that thereupon he gave up the project of borrowing of the life insurance company. That Mackay furnished $1,000 for that purpose and refused to furnish any more. Mackay testifies that he agreed to furnish Belding but $1,200 and that he did furnish that. The release of the trust deed was made with the knowledge and consent of John W. Seymour, who testifies: "I knew of it at the time it was done. It was arranged between

Belding and myself that the trust deed should be released for the purpose of allowing him to raise the money to carry out his arrangement with me to purchase cattle, in which cattle I was to have an interest, or partnership, in lieu of the amount secured by the trust deed. But as Belding failed to carry out his arrangement to give me an interest in the cattle, neither my wife nor myself received any consideration whatever for releasing the trust deed." In 1874 Seymour testified: "I settled up with Belding on open account, which ran through the time I was at his place in the spring of 1870 to the spring of 1872, and as there had been numerous indorsements on the note mentioned in the trust deed it was thought best to figure up the interest and draw a new note covering the entire amount." In 1876 another note was taken, and the note given in 1874 was given up. This last note has been merged in a judgment and *fi. fa.* issued and levied on the land embraced in the trust deed. The taking of this note with a full knowledge of the release of the trust deed, and of Belding's failure to comply with his arrangement with Seymour, as stated *supra*, was a ratification of said release. The intention as shown by the attending circumstances was that the new note should be a payment of the old note, and this intention should prevail. 2 Jones on Mortgages, Sec. 926, and cases cited in note. We are unable, after a careful consideration of this record, to find proof sufficient to authorize a reversal of the decree in this case. The decree of the court is fully sustained by the proof.

*Decree affirmed.*